Good morning, Your Honors. We are students from the University of Arizona's James E. Rogers College of Law. We represent Ms. Faye Almazon, who is here with us in court today as part of the Ninth Circuit Pro Bono Appellate Project. My name is Sherry Jansen, and I will discuss the duty that the government owed to Ms. Almazon. Co-Counsel Nani Shivers will discuss the FTCA, and I'd like to reserve two minutes of rebuttal time for Edwin Aguilar. Well, you've got a clock in front of you, and if you stop talking, whenever you stop talking, the rest of the time is yours for rebuttal. Thank you, Your Honor. Ms. Almazon just wants her day in court. She is only appealing the District Court's grant of summary judgment on her negligent infliction of emotional distress claim. The District Court made her task on appeal clear. Point us to the basis of the duty that you're asserting. That duty is based in the public policy of Article I, Section 8 of the California Constitution, as well as in the FEHA. Does it apply to the United States? Yes, Your Honor. It has been held to apply to the United States. Where? Public policy. Sorry? I'm sorry. It has been held. It has been held where? I thought you were asking me if public policy or negligence claims apply. No, the duties that sound to me like the growth of state law, you're dealing with the United States. The United States stands above state law, beyond state law in many ways, and usually you have to find some way of bringing state law in to make it applicable to the United States, and I'm just wondering where you get it, how you make these state law things applicable to the United States. Well, because this is a negligence claim, the FDCA waives immunity for the government in all cases where there is a tort, like the negligent infliction of emotional distress, they are liable to the same extent that a normal person would be. You're taking a contract claim and turning it into a tort claim? Is that what you're doing? No, that is not what we're doing, Your Honor. This is a negligent infliction? What did the United States do? Fail to renew the contract, right? No, they failed to prevent the sexual harassment and retaliation against her. And retaliation consisting of what? The retaliation, is that what you're asking about? Ms. Almazon alleges in her complaints that there were a number of different things that they did after Furches retired, and Furches was the person who committed the sexually harassment. That is only the end result. It is a process that began with the sexual harassment by Furches, and then it began with the retaliation by Paquette and Moore, which ultimately ended in a non-renewal of her contract. That was just the end point. This whole process is what caused her emotional distress. The government had a duty to prevent sexual harassment that they knew was occurring. They knew that because there were complaints. There was an administrative complaint and a district court complaint about the sexual harassment that Furches was committing. They didn't do anything to prevent his acts, and they didn't do anything to prevent the acts of Paquette and Moore when they retaliatorily non-renewed her contract. In addition, Ms. Almazon also not ever required before taking parking spaces away, making her remove tables and chairs so that her customers had nowhere to sit. How is that negligence? That's not negligence on their part. The government had a duty to prevent this going on. Those were intentional acts by Paquette and Moore. The government was negligent in not preventing these by not taking any reasonable steps. That's all they had to do was take a reasonable step. They did none of that, and this spanned several years, and they had noticed it at several different opportunities. So Paquette and Moore, who are government employees to you, are sort of standing aside from the government. They commit intentional acts, and of course, intentional acts can't be the basis of an FTCA claim. And then you're putting the United States separate as the negligent entity for not controlling its employees. By that theory, I wonder how you ever have a situation where you've got government employees committing intentional torts, where you couldn't bring an FTCA claim and say, well, you know, employees committed these intentional torts. The United States was negligent in preventing it. Isn't this sort of a nice, neat, law school way to get around? If there were always a duty. It's good for a law school exam question, but I'm not sure in real life it works. In most of those cases, there's not always going to be a duty for the government to prevent those intentional acts. Here, there's a duty. Oh, sure. State law is always going to require an employer to prevent employees from doing, you know, taking a baseball bat and hitting somebody in the head. You know, whatever the intentional tort is, isn't the employer always going to have a state law duty to prevent the employee from committing the intentional tort? I can't imagine any other system. If the employee commits an intentional tort that the state legislator has said that they shouldn't be committing and that the employer has a duty to prevent, then they should be held liable. I don't think... But the problem is that brings every intentional tort by a United States government employee into the FTCA. You've just driven a big hole through the intentional tort exception to the FTCA or the requirement that there be a negligence rather than intentional. Basically, every intentional tort by a government employee becomes attributable as negligence to the United States. Is that not the problem? I see your point about that. I don't know. I don't have any specific examples for you where there is an intentional tort and the government doesn't have a duty to prevent that, but I don't see that that is a problem. If there are intentional acts being committed against an employee and the employer has a duty to prevent that, then they should be held liable and it should be brought under the FTCA so that the employees are protected. And my time is up, Good morning, Your Honors. Ms. Almazon's negligent infliction of emotional distress claim is not... I'm sorry, I didn't get your name. Oh, my name is Nani Shivers. Ms. Almazon's negligent infliction of emotional distress claim is not barred by the discretionary function under the FTCA because Ms. Almazon's claim is based on the government's tortious conduct arising from sexual harassment, not a protected policy decision. Under the FDHA and Article 1, Section 8 of the Constitution, Ms. Almazon's claim was to prevent and stop the sexual harassment that ultimately resulted in the negligent infliction of emotional distress. The government's tortious conduct violated this duty. When Naval employees Paquette and Moore retaliated against Ms. Almazon, they were not exercising a protected government right to make a policy decision. Rather, they were continuing a pattern of sexual harassment and discrimination against Ms. Almazon for her administrative complaints alleging harassment. Several cases support this contention. Horta, a case from the 1st Circuit, says that when government employees have an ulterior motive for a discretionary decision, that decision then falls outside of the discretionary function. There's also an 8th Circuit and a 9th Circuit case that say when a regulation is not followed, such as the California Constitution and the FDHA, a discretionary function therefore falls outside the exception. In this case, because Article 1... Cases involving state regulations? Yes, actually. We cite in our brief Anderson versus the United States, and that was a Washington case. And in that case, the court... I'm sorry, when you say a Washington case? Yes, it was a... Let me look up the exact site for you. It was in... I believe it was a 9th Circuit case. I don't have the citation here, but I can grab my brief. 127, 1030, 1190? I believe it was an appellate case, or I believe it was a 9th Circuit case from what I have here in my notes. And in that case, the court held that the Washington Civil Rights Statute imposed a mandatory duty on the government not to discriminate. And the FTCA, the discretionary function, did not bar them bringing a claim under the Washington Civil Rights Statute for sexual harassment or discrimination. Didn't California law change after a period of time? Are you referring to the amendment to the FDHA? Yes. Yes, it... In 1999, enacted in 19... Enacted in 1999, applicable in 1992, the FDHA was amended to include independent contractors. And your act says that your complaint occurred before that. It did. The conduct that Ms. Almazan alleges in her complaint occurred from 1993 through 1998, and then the continuing course of conduct occurred from when Furches left the Navy in 1998 through the time that her contract was terminated. Point is, the duty that you seek to impose didn't become effective until January 1, 2000? In our brief, Your Honor, we say that because it's a common law claim, the fact that the duty didn't cover it at that point is irrelevant. And furthermore, it's based on the public policy, and that public policy was firmly ensconced in Article I, Section 8, as well as in other California statutes at the time, so it would protect her. And my time is up, and I'd like to save the 30 seconds for my co-counsel, Mr. Aguilar. Thank you, Your Honors. Good morning, Your Honors. Before I begin, I want to commend the law students for the excellent job they've done briefing and arguing this case. It is a complicated case. I think it's complicated factually, legally, and procedurally, because it does involve two separate lawsuits. I think it's pretty clear, however, that the harassment claim is time barred. The harassment claim was the subject of her first administrative claim. That suit was brought prematurely in district court, and it was dismissed. Time barred under the Federal Tort Claims Act? Time barred under the Federal Tort Claims Act, yes. Failure to notify the government within six months? When you say time barred, be more specific. Right. Well, it's time barred because it's ratio decada as to the first claim. She filed an administrative claim, and she did file that within six months, but then she came to court prematurely without waiting for that six months to transpire in which the agency gets to investigate the claim. So she comes to court prematurely, and then there's a denial of that claim issued by the agency. And she would have had to refile her claim within six months of the denial in order to protect her rights with regard to the sexual harassment claim. So because she didn't do that, that case that she initially filed prematurely was ultimately dismissed without prejudice. She couldn't refile that case. So the sexual harassment claim, which seems to be the primary claim that the plaintiff is taking issue with here, is barred for several reasons. One bar is, I do think this is attempting to turn a renewal decision into, essentially a contract decision, into a tort decision. So the first bar would be the Contract Disputes Act. And to the extent she's alleging failure to supervise that has nothing to do with non-renewal, that potentially could become a tort if there were a duty in question and if the discretionary function exception did not apply. Here you have the discretionary function exception, which the Ninth Circuit has found to apply to negligent supervision, essentially, kinds of claims, which is what this is. We failed to prevent the harassment of Purchase. We failed to investigate the harassment of Purchase. So under the Contract Disputes Act, would she go to the Board of Contract Appeals? Yes, she initially filed. If she doesn't get the contract renewed, she could have brought a, what agency is this? This is the Navy Exchange, Your Honor. So this would have been the Armed Services Board, ASBCA? Right, exactly. What she first does is she files an appeal with the contracting officer, and then she appeals that decision to the Board. So she does have a remedy, and while you don't have the typical retaliation announcement. Could she, in bringing that kind of case before the Board, could she have argued that the contract was not renewed for retaliatory reasons? Yes, she could have, Your Honor, in a sort of circuitous way. I mean, they don't import Title VII analysis, and the only case I could find on point was a whistleblower protection claim, where they tended to, they were attempting to argue whistleblower protection in that venue, and they said, you know, we're not going to import all these rights from the Whistleblower Protection Act because you're a contractor, you're not an employee. However, we will look and see whether or not this decision was made in bad faith, with a bad faith motive, with an intent to injure you. So they get to the same result without implying, you know, without applying the entire analysis of a Title VII retaliation claim to her. They get to the same result. They look at the motivation. She could also have gone for the very qualifiable claims. That's right, Your Honor. And that would have been essentially the same analysis. That's right. That's right. So she did have other, she had other venues to pursue this. In fact, she was obligated by the CDA because it says that contracting decisions are not subject to review by any forum, tribunal, or agency. So they were not subject to review by the District Court. The opinion by the District Court did not reach that issue. She basically decided on discretionary function, and she knocked out all the claims that were based on a renewal. It's my impression from looking at the file and looking in detail at the record that there is no retaliation in this record other than the non-renewal. I mean, this morning of investigations, chairs and tables being taken away, and a series of retaliatory acts by Paquette and Moore. It just doesn't show up in the record. None of those facts show up in the record. If you look at the second administrative claim, it's based specifically on the non-renewal decision. And she actually, even though she uses a longer time frame in that claim, the only thing she actually refers to is the non-renewal decision. This is not, again, a termination of a contract. It is a contract that expired of its own terms. Then there was a request for proposal that was sent out to anyone who wanted to bid on a contract, and she did not fit the solicitation requirements for the request for proposal. It was a movement regionally to move to brand name agencies, and it was the kind of policy decision that's based on economic and administrative considerations that the discretionary function exception is designed to protect. So, while there's no evidence of retaliation in any but she, I guess, could claim that although ostensibly it was that decision, really what they did is they jiggled the terms of the RFP to exclude her in retaliation for harassment. That's a different view of what happened, and if we accept her claim as a valid claim, not as true, but as a valid claim, then it falls outside the discretionary. It's only within the discretionary function exception if we accept the government's reasons. Well, no, I don't believe so, Your Honor, because according to the Supreme Court, you look at the nature of the conduct and not the subjective intent of the actor. So, you look at the nature of the conduct, which is a request for proposal that says we want regional brand name vendors, and the nature of the conduct, which is we want to pick this bad faith motivation, that still comes within the Contract Dispute Act. If she can show that. Do you have a tape recording of them sitting there saying, you know, let's put in a requirement from name brand vendors because that will really stick it to Amazon. Again, I think that does. We don't really care about name brand vendors, but we'll just stick it in the contract because we know that will exclude her and that will show her to be claiming harassment. I do think that goes to the subjective intent of the RFP, of the actors who created the RFP. And again, if that existed, that would be the perfect evidence on which plaintiff could rely in the CDA forum to say, here's my evidence of specific intent to injure me in bad faith with regard to the RFP and the initiation of the new contract. And there is no such evidence, obviously, in this record. The record reflects that they were moving regionally to brand name vendors. They've not contracted with any organization that's not a brand name vendor since this occurred. So there certainly is no evidence of a specific intent to injure her with regard to this RFP. But it's worth noting that the six years has not passed for her to raise this decision under the CDA. I understand there is a six year statute of limitations under the CDA. So to the extent she wanted to make a forum available to her, she potentially still has that forum to raise this issue. Okay, thank you. Good morning, Your Honors. My name is Edwin Aguilar. I'll be brief. The lower court gave very specific marching orders in its decision. Quote, it said, plaintiff fails to cite to any California case or state law establishing defendant's duty to prevent sexual harassment of a plaintiff. In our briefs and in arguments here, we've tried to point to that, noting that the California Constitution, Article I, Section 8, provides a basis. The FDHA, even though amended after the facts in question here, seem to suggest a codification of already existing policy. And finally, we'd like to note that there are some... What do you do about the statute of limitations argument? Excuse me? What do you do about the statute of limitations argument? In terms of which of the... Well, I'll try to answer your question. Is that the sexual harassment of the government's claim? Sure. That was something that, as far as it would fall under the Federal Tort Claims Act, she had to do to bring it within six months. She didn't. I'm out of time. If I may mention? Yes. Sure. The plaintiff's position is that the sexual harassment continues in substance if changing somewhat in form. So that the harassment that she faced in the place in which she was employed continued really up until the time at which she filed her second complaint. But you're dealing with technical requirements where you have to give the Navy six months' notice and let them take that to the end of the six-month time and then get a decision. And then you can file. Right. But that didn't happen here. Well, there were two complaints, administrative complaints. The first one back in 19... I've got my notes. But the first one in, like, 93 or 94, or excuse me, it's 97. That's the one that ran afoul of her sort of eagerness to file in a suit immediately on the heels of it. The second one occurs in there that was filed in 2000. And it's from those that second administrative complaint that this particular action comes from. OK. If you have no further questions, thank you very much. All right. Case just submitted. So let's just thank the University of Arizona for providing such fine representation and very good arguments in this case. The case just arguably stands admitted. And I think this is our last case for the day. Yes, it is. We are adjourned. All rise. This court for this session stands adjourned. Thank you.
judges: Kozinski, O'scannlain, Silverman